UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHRISTOPHER SEAMAN
and
FRANCIS D. HAGAN                                                                         PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:14-cv-00823-CRS-CHL

SAFE AUTO INSURANCE COMPANY                                                    DEFENDANT

Memorandum Opinion

I.   Introduction

This matter is before the Court on the motion of Defendant Safe Auto Insurance Company ("Safe Auto") for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 27.[1] Safe Auto submitted a supplement to its motion for summary judgment, ECF No. 30. Plaintiffs Christopher Seaman and Francis Hagan (collectively, "Plaintiffs") then filed a cross-motion for partial summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 38. Safe Auto filed a reply to its motion for summary judgment and a response to Plaintiffs' cross-motion for summary judgment, ECF No. 41. Plaintiffs filed a reply to their cross-motion for summary judgment, ECF No. 42.

Because these motions involve the same facts and issues, the Court will address them in a single memorandum opinion and order. For the reasons discussed below, the Court will grant

---

[1] Safe Auto does not specify that it is moving for summary judgment under Federal Rule of Civil Procedure 56(a). Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."

Safe Auto's motion for summary judgment on Plaintiffs' claims for breach of contract and for bad faith. The Court will deny Plaintiffs' cross-motion for summary judgment.

II.     Background

Safe Auto issued Auto Insurance Policy number KY00695160A-00 ("the policy") to Mary C. Delonjay, a non-party. Ex. 1 at 1, ECF No. 27-2. Under the terms of the policy, Safe Auto agreed to provide Delonjay with automobile insurance from March 4, 2012 to September 4, 2012. *Id*. As described in the policy, Safe Auto could terminate Delonjay's insurance coverage if (1) she failed to pay the premium by the due date listed in her invoice and (2) it then gave her at least a fourteen day notice of cancellation. *Id*. at 26–27. If Delonjay paid the premium by the cancellation date on the notice, she could avoid cancellation of the policy. Holowitz Aff. 10, ECF No. 27-3.

On May 4, 2012, Safe Auto sent Delonjay an invoice for her premium. *Id*. at 2. The invoice stated that the payment was due on May 11, 2012. *Id*. On May 10, 2012, Delonjay called Safe Auto to clarify when she had to pay the premium. Hall Aff. 3, ECF No. 27-4. The Safe Auto representative informed Delonjay that the payment was due the next day. *Id*. at 3. The representative also mentioned that the last day to pay the premium was before midnight on May 28, 2012 to avoid cancellation of the policy on May 29, 2012 at 12:01 A.M. *Id*. at 4.

Delonjay did not pay her premium by May 11, 2012. *See* Holowitz Aff. 3, ECF No. 27-3. The next day, Safe Auto sent Delonjay a cancellation notice stating that it would terminate the policy on May 29, 2012 at 12:01 A.M. if she did not pay her premium. *Id*.

On May 15, 2012, Delonjay made three phone calls to Safe Auto. During the first phone call, Delonjay requested that Safe Auto add a vehicle to the policy. Hall Aff. 5, ECF No. 27-4. Because Delonjay already had four vehicles listed on the policy, the Safe Auto representative

2

informed her that she would have to purchase a second split policy if she wished to insure all five vehicles. *Id*. at 6. Towards the end of the first conversation, Delonjay mentioned that she had a premium that she still had not yet paid. *Id*. at 7. Delonjay eventually determined that she could not purchase a second split policy because of the additional cost. *Id*. During the second phone call, Delonjay asked Safe Auto to remove two of the vehicles insured under the policy and to add two vehicles to the policy. *Id*. at 9. The Safe Auto representative reminded Delonjay to pay her premium by May 28, 2012 at midnight to avoid cancellation of the policy on May 29, 2012 at 12:01 A.M. *See id*. at 11. During the third phone call, Delonjay requested that Safe Auto send her a certificate of insurance that would show the change in the vehicles that were insured under the policy. *Id*. at 14. Delonjay explained to the Safe Auto representative that she needed to send the certificate of insurance to the county clerk's office. *Id*.

As a result of the three phone calls, Safe Auto sent Delonjay two documents: first, a document entitled "Auto Insurance Policy Declarations" ("the endorsement") and second, the certificate of insurance. Endorsement, ECF No. 19-2; Certificate of Insurance, ECF No. 30-1. The endorsement states that the policy extends from March 4, 2012 to September 4, 2012. Endorsement, ECF No. 19-2. It affirms that it "[s]upersedes prior [d]eclaration [p]age [i]ssued." *Id*. It also states that it, "along with the Policy Jacket (Form KY1010/0809), your signed application (Form KY1000/1008), and any endorsements/forms listed below complete the above Policy." *Id*.

In comparison, the certificate of insurance identifies the vehicles insured under the policy and the extent of the insurance coverage. Certificate of Insurance, ECF No. 30-1. The certificate of insurance states that it "neither affirmatively or negatively amend[ed], extend[ed], or alter[ed]

3

the coverage afforded by Policy No. KY00695160A-00 issued by Safe Auto Insurance Company." *Id*.

Delonjay did not pay her premium by May 28, 2012 at midnight. *See* Holowitz Aff. 3, ECF No. 27-3. Safe Auto accordingly canceled the policy effective May 29, 2012 at 12:01 A.M. *Id*.

On May 30, 2012, Hagan was driving one of the vehicles insured under the policy. Mem. Supp. Mot. Summ. J. 6, ECF No. 27-1; Mem. Supp. Resp. Mot. Summ. J. 2, ECF No. 38-1; Accident R., ECF No. 19-1. He failed to see Seaman, who was driving a motorcycle. *Id*. Hagan collided with Seaman. *Id*. The accident incapacitated Seaman, who was taken to the hospital. Accident R. 6, ECF No. 19-1.

The day after the accident, Delonjay paid the premium, which reinstated the policy from that point forward. Holowitz Aff. 4, ECF No. 27-3. Hagan, Seaman, and Delonjay then submitted a claim for the accident under the policy. *See* Parker Aff. 3–5, ECF No 27-5. Shortly thereafter, Safe Auto sent them letters explaining that the policy had been canceled when the accident occurred and thus that it could not assist in paying any damages or costs resulting from the accident. *Id*.

Almost a year later, Hagan executed an assignment and covenant not to execute his rights under the policy in favor of Seaman. Assignment, ECF No. 27-6. Under this agreement, Hagan assigned all rights, claims, and causes of action he might have had against Safe Auto to Seaman. *Id*. at 3. Hagan agreed to "cooperate fully with Seaman" to pursue the rights under the policy. *Id*.

Seaman apparently thereafter filed suit against Hagan in the Nelson County, Kentucky Circuit Court. *See* Consent J. 2, ECF No. 19-3. On September 3, 2014, the Nelson Circuit Court entered a consent judgment against Hagan for $597,889.21. *Id*.

Upon the entering of the consent judgment, Plaintiffs filed suit against Safe Auto in the Nelson County Circuit Court. Compl., ECF No. 1-2. They allege that Safe Auto breached the policy when it denied coverage for their claim arising from the accident. *Id.* ¶ 13. They also allege that Safe Auto violated the Consumer Protection Act, the Unfair Claims Settlement Practices Act, and the Kentucky Motor Vehicle Reparations Act, and they assert that Safe Auto engaged in bad faith. *Id.* ¶ 14. Plaintiffs seek to recover the amount of the consent judgment. *Id.* ¶¶ 23–25.

Safe Auto removed the case to this Court. Notice of Removal, ECF No. 1. Safe Auto now moves for summary judgment on Plaintiffs' claims for breach of contract and for bad faith.[2] Plaintiffs move for partial summary judgment on the issue of coverage.

III.     Discussion

Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

---

[2] While Safe Auto asserts that it is moving for summary judgment on all of Plaintiffs' claims, Mem. Supp. Mot. Summ. J. 15, ECF No. 27-1, it only addresses Plaintiffs' claims for breach of contract and bad faith. If Safe Auto wishes to move for summary judgment on Plaintiffs' other claims, it should submit a motion and a memorandum addressing them.

5

Safe Auto argues that summary judgment should be granted on Plaintiffs' claim for breach of contract because the cancellation process for Delonjay's policy was consistent with Kentucky law and the terms of the policy. Mem. Supp. Mot. Summ. J. 9, ECF No. 27-1. Under Kentucky Revised Statute § 304.20-040(2)(a)(1), automobile insurance may be canceled for nonpayment of a premium. Kentucky law, however, also requires that the insurance company provide at least fourteen days' notice before revoking a policy for nonpayment of a premium. *Id*. § 304.20-040(3). The insurance company must mail or deliver the cancellation notice to the insured. *Id*. § 304.20-040(9). Accordingly, under the policy, Safe Auto could terminate Delonjay's coverage for non-payment of the premium if it sent her at least a fourteen day cancellation notice. Ex. 1 at 27, ECF No. 27-2.

Safe Auto followed the cancellation process listed in the policy and under Kentucky law when it revoked Delonjay's policy for nonpayment of her premium. The due date for the premium invoice was May 11, 2012. Holowitz Aff. 2, ECF No. 27-3. When Delonjay did not pay her premium by the due date, Safe Auto sent her a seventeen day cancellation notice on May 12, 2012.[3] *See id*. at 103 (explaining that Safe Auto would cancel the policy on May 29, 2012 at 12:01 A.M.). When Delonjay failed to timely pay the premium, Safe Auto canceled the policy on May 29, 2012 at 12:01 A.M. *Id*. at 3.

Plaintiffs appear not to contest that the process by which Safe Auto canceled the policy was consistent with Kentucky law or with the terms of the policy. Plaintiffs instead argue that the endorsement extended coverage until September 4, 2012 or at least created an ambiguity about whether the policy was canceled on May 29, 2012 at 12:01 A.M., which they assert would

---

[3] That the notice was mailed is evidenced by the proof of mailing list, which was generated during Safe Auto's routine mailing procedures and includes Delonjay's name. Holowitz Aff. 3, 9, ECF No. 27-3.

require this Court to interpret the policy as favoring coverage at the time of the accident. Mem. Resp. Opp. Mot. Summ. J. 10–12, ECF No. 38-1. In support of this argument, Plaintiffs point to the endorsement's failure to list the policy's cancellation date of May 29, 2012 at 12:01 A.M. and to the statement on the endorsement that it "[s]upersedes prior [d]eclaration [p]age [i]ssued." *Id*. at 11. In response to these assertions, Safe Auto contends that the endorsement did not change that the policy had been canceled as of May 29, 2012 or give rise to an ambiguity about the cancellation date. Reply 5, ECF No. 41. Safe Auto explains that neither the policy nor the endorsement contains language suggesting that a change to the coverage would also affect the cancellation process. *Id*. at 7. Moreover, "[t]he [endorsement] states that the coverage is subject to the terms of the Policy, which spell out the cancellation procedure, while the Certificate indicates that the Policy may cancel before the expiration date if the premiums are not paid out on time." *Id*. at 8.

Any ambiguities in the language of insurance contracts should be "liberally construed and all doubts resolved in favor of the insureds." *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (citing *Grimes v. Nationwide Mut. Ins. Co.,* 705 S.W.2d 926, 931 (Ky. Ct. App. 1985)). Additionally, all "exceptions and exclusions should be strictly construed to make insurance effective." *Id*. "And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used." *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859–60 (Ky. 1992) (citing *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984)).

In this case, even taking all facts in the light most favorable to Plaintiffs and construing all doubts about the meaning of the insurance policy in favor of Plaintiffs, the endorsement's language does not suggest that the policy continued past the cancellation date of May 29, 2012 at

12:01 A.M. or was active as of the time of the accident. Nor does the endorsement's language give rise to an ambiguity about the cancellation date of the policy. As noted by Plaintiffs, the endorsement does not list the date when the policy would be canceled for non-payment of the premium. Mem. Resp. Opp. Mot. Summ. J. 11, ECF No. 38-1; Endorsement, ECF No. 19-2. But the endorsement cannot be read independently of or in place of the policy: the endorsement states explicitly that it "along with the Policy Jacket (Form KY1010/0809), your signed application (Form KY1000/1008), and any endorsements/forms listed below complete the above Policy." *Id*. And the policy provides that Safe Auto could cancel coverage if Delonjay received at least a fourteen day cancellation notice, which occurred in this case. Ex. 1 at 27, ECF No. 27-2; Holowitz Aff. 3, ECF No. 27-3. Therefore, that the endorsement does not list the cancellation date cannot reasonably be said to have affected the date when coverage ended as a result of Delonjay's failure to timely pay the premium.

As Plaintiffs also point out, the endorsement states that it "[s]upersedes prior [d]eclaration [p]age [i]ssued." Endorsement, ECF No. 19-2; Mem. Resp. Opp. Mot. Summ. J. 11, ECF No. 38-1. But this statement is limited: it provides only that the endorsement would override previous endorsements— not that it would override the policy and its cancellation provisions.

Because the policy was properly canceled one day before the accident, on May 29, 2012 at 12:01 A.M., a date that the endorsement did not modify, summary judgment in favor of Safe Auto is appropriate on Plaintiffs' claim for breach of contract.

Safe Auto argues that, without a claim for breach of contract, Plaintiffs' claim for bad faith fails as a matter of law, an argument that Plaintiffs do not address. Under Kentucky law, "in absence of a contractual obligation in an insurance policy for coverage, there can be no claim for

8

bad faith." *Ky. Nat'l Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. Ct. App. 2004). Here, because Safe Auto did not breach the policy when it canceled coverage, Plaintiffs cannot establish their claim for bad faith. Therefore, summary judgment is appropriate on their claim for bad faith.

IV. <u>Conclusion</u>

For the reasons discussed above, the Court will grant Safe Auto's motion for summary judgment on Plaintiffs claims for breach of contract and for bad faith. The Court will dismiss these claims with prejudice. The Court will deny Plaintiffs' cross-motion for partial summary judgment. The Court will refer the remainder of the matter to the magistrate judge. An order will be entered in accordance with this memorandum opinion.

December 6, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**